## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EVELYN BYRD,

       Plaintiff,

  v.

ATLANTIC CITY HOUSING
AUTHORITY, *et al.*,

       Defendants.

No. 1:19-cv-18575

**OPINION**

**APPEARANCES**:

Peter M. Kober
KOBER LAW FIRM, LLC
1864 Route 70 East
Cherry Hill, NJ 08003

    *On behalf of Plaintiff.*

Gerald J. Helfrich
MUSCIO, KAPLAN & HELFRICH, LLC
3125 State Route 10, Suite 2D
Denville, NJ 07834

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on the Cross-Motions for Summary Judgment filed by Plaintiff Evelyn Green ("Plaintiff") and Defendants Atlantic City Housing Authority ("ACHA") and ACHA Executive Director Thomas J. Hannon ("Hannon" and with ACHA, "Defendants"). (ECF Nos. 76–77). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment, (ECF

No. 76), and **GRANTS IN PART and DENIES IN PART** Defendants' Motion for Summary Judgment, (ECF No. 77).

I. **BACKGROUND**[1]

Plaintiff was employed as a security guard at ACHA from roughly September 2011 until October 2017. (Pla.'s Stat. of Mat. Facts ("SOMF"), ECF No. 76-3, ¶¶ 1–2; Defs.' SOMF, ECF No. 77-5 ¶ 1). As an ACHA employee, she was bound by its personnel policy, which, among other things, provides that "[a]n employee's employment and compensation can be terminated with or without cause and with our without notice, at any time at the option of either the Authority or the employee, unless the employee is otherwise covered by Civil Service or a Collective Bargaining Agreement." (Exh. G, ECF No. 77-12 at PDF p.44; Defs.' SOMF, ECF No. 77-5, ¶ 1). As this clause contemplates, Plaintiff was a member of a union—the Security, Police and Fire Professionals of America Local 506 ("the Union")—that had negotiated a collective bargaining agreement with AHCA that covered her. (ECF No. 76-3, ¶ 4; Exh. H, ECF No. 77-13 at 136:14–24).

Among others, Article 7 of that collective bargaining agreement includes the following terms:

> G. Discipline for an employee shall be imposed for just cause. The Chief Steward will be informed within forty-eight (48) hours by mail or fax when discipline of any nature is to be imposed.
>
> . . . .
>
> I. If an employee is summoned to a meeting, which he/she reasonably believes will lead to disciplinary action, he/she will have the right to have a Chief Steward at the meeting.
>
> J. When the Employer believes that an employee has acted in such a manner that he/she should be subject to disciplinary action, the Management should first privately discuss the matter with the employee concerned and the Union

---

[1] The facts set forth herein related to this Motion are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

2

representative, if the employee requests such.

K. Upon request of the Union, the parties will mutually arrange a hearing at the earliest possible date after the proper notice has been given to the employee.

L. A hearing officer will be assigned by the Executive Director or designee. All facts should be presented at this hearing, and both parties afforded the opportunity to present witnesses, documents and make oral arguments before the hearing officer.

M. A report of the hearing and a determination of the extent of disciplinary action, if any, will be made within twenty (20) calendar days by the hearing officer after the close of the record.

N. The Personnel Officer, with the approval of the Executive Director, may determine that an immediate suspension with or without pay may be imposed pending the outcome of the hearing. The employee will be notified of such a determination and the reasons for the decision upon being served with the disciplinary charges, and given an opportunity to respond verbally or in writing.

O. Following a hearing, the Hearing Officer may decide to agree with the recommended Disciplinary action or amend the recommended action to take (1) or more of the following forms, which are not required to be in the order set forth below:

> 1) Verbal reprimand, with notations to the employee's personnel file that such action was taken;
>
> 2) Written reprimand with a copy of the reprimand placed in the employee's personnel file;
>
> 3) Suspension from duty without pay for one (1) or more days;
>
> 4) Demotion or payment of a fine as set forth below. Demotion shall include, but not be limited to, a change in job title and/or loss of pay. A fine may be imposed as a form of restitution, in lieu of suspension, where the employee has agreed to payment of a fine as a disciplinary action. The fine may be paid in lump sum or installments, as determined by the Executive Director or designee;
>
> 5) Dismissal from the Authority's employ.

P. The Executive Director will review the Hearing Officer's decision and authorize the imposition of the recommended disciplinary action. The Executive Director can, for good cause, amend the recommended action prior to imposition. The Union will be permitted in such a situation to provide written opposition to the Executive Director's decision, only where the action of the Executive Director causes an increased discipline.

(Exh. I, ECF No. 77-14 at 11–12; ECF No. 76-3, ¶ 4; ECF No. 77-5, ¶¶ 8, 11–13). The article also sets forth "a non-exclusive list of possible violations that may affect the employee's

status/employment with the Authority," including, (i) "Harassment of co-workers, volunteers or visitors," (ii) "Insubordination," (iii) "Failure to perform duties," (iv) "Conduct unbecoming a public employee." (Exh. I, ECF No. 77-14 at 10–11; ECF No. 77-5, ¶ 10).

By September 29, 2017, and in the weeks that followed, Defendants came to believe that they had just cause to discipline Plaintiff for a series of personnel issues that occurred beginning in September 2017. (ECF No. 76-3, ¶ 6; Exh. 5, ECF No. 76-5). These issues included unbecoming conduct, harassment of a coworker, intimidation of a coworker, appearing on property when unscheduled, videotaping employees when off duty, and spreading rumors about coworkers. (ECF No. 76-3, ¶ 6). Defendants prepared several security incident reports and multiple coworkers of Plaintiff provided written statements memorializing these events. (ECF No. 76-3, ¶¶ 7–16; Exhs. 6–14, ECF No. 76-6–76-14).

On October 21, 2017, Defendants presented Plaintiff a discharge memorandum informing her that she was terminated from her employment effective immediately. (ECF No. 76-3, ¶¶ 17–18; Exh. 16, ECF No. 76-16). The memorandum explained that Plaintiff had "repeatedly violated the terms of [her] employment" by "creat[ing] a hostile work environment for . . . part-time employees" and spreading "gossip and untruths" about coworkers and their families and was signed by Hannon as ACHA's Acting Executive Director. (Exh. 16, ECF No. 76-16). This memorandum was Plaintiff's first notice of the allegedly just cause for her determination. (ECF No. 76-3, ¶ 18).

Ten days after her termination, the Union filed a grievance on Plaintiff's behalf and a post-termination hearing was held on November 30, 2017. (ECF No. 77-5, ¶¶ 17, 19; Exh. J, ECF No. 77-15). Plaintiff attended the hearing alongside representatives from the Union and was allowed to present evidence and testimony in her defense. (ECF No. 77-5, ¶¶ 20–21; Exh. H, ECF No. 77-

13 at 196:11–197:20).

On December 8, 2017, ACHA advised Plaintiff by letter that the hearing officer had determined that "the circumstances surrounding [her] termination of employment were both valid and truthful," and thus, the decision to terminate her would not be reversed. (Exh. K, ECF No. 77-16; ECF No. 77-5, ¶ 22). Plaintiff contacted the Union and requested that it seek to proceed to arbitration on her behalf. (ECF No. 77-5, ¶ 22). In a letter dated March 18, 2018, the Union advised her of its decision with respect to that request:

> After careful consideration of the facts of your grievance, the grievance has been turned down because it **_lacked arbitration merit_**. Therefore, the grievance will not be arbitrated. **It will be withdrawn without _prejudice and precedent_**. A notice will be sent to the employer. **No further action will be taken.**

(Exh. L, ECF No. 77-17 (emphases in original); ECF No. 77-5, ¶ 25).

This suit followed. (Compl., ECF No. 1).

## II.     PROCEDURAL HISTORY

Plaintiff initiated this action on October 1, 2019, by filing her Complaint *pro se*. (ECF No. 1). She later applied for and was granted *in forma pauperis* status. (ECF No. 5). Plaintiff subsequently retained counsel, who entered his appearance on March 20, 2020. (ECF No. 23).

Although her original Complaint asserted a variety of claims against several defendants, Plaintiff later amended the pleading without opposition, narrowing her allegations. (ECF No. 33). Plaintiff's Amended Complaint comprised eight counts: (i) wrongful discharge in violation of public policy under New Jersey common law as to both Defendants ("Count I"); (ii) denial of pre-deprivation procedural due process under 42 U.S.C. § 1983 as to Hannon in his individual capacity ("Count II"); (iii) the same as to Hannon in his official capacity ("Count III"); (iv) the same under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as to ACHA ("Count IV"); (v) denial of post-deprivation procedural due process under 42 U.S.C. § 1983 as to Hannon in his

individual capacity ("Count V"); (vi) the same as to Hannon in his official capacity ("Count VI"); (vii) the same under *Monell* as to ACHA ("Count VII"); and (viii) denial of fundamental fairness under New Jersey common law as to both Defendants ("Count XIV"). (ECF No. 33).[2] Defendants answered on June 24, 2020, and the parties proceeded to discovery. (ECF No. 34).

After the close of discovery on May 31, 2021, (ECF Nos. 45, 47), and an unsuccessful settlement conference in July 2021, (ECF No. 48), the parties filed their first Cross-Motions for Summary Judgment on November 12, 2021. (ECF Nos. 52–53). The Court heard oral argument on those Motions on June 29, 2022, and delivered an opinion from the bench. (ECF No. 70).

The Court granted Defendants' Motion, (ECF No. 53), in part and denied it in part without prejudice. (ECF No. 69). Specifically, the Court granted Defendants summary judgment on all counts except Count II and Count XIV of the Amended Complaint and denied summary judgment without prejudice as to those same counts. (ECF No. 69).

As to Plaintiff's Motion, which sought summary judgment on Counts II and III only, (ECF No. 52), the Court denied it in part and denied it in part without prejudice. (ECF No. 69). The Court denied Plaintiff summary judgment as to Count III—having granted Defendant summary judgment on that same count—and denied her summary judgment without prejudice as to Count II. (ECF No. 69).

The Court further ordered the parties to attend another settlement conference with Magistrate Judge Matthew J. Skahill, and if unsuccessful, granted them leave to file renewed motions for summary judgment as to the remaining claims. (ECF No. 69).

---

[2] Counts VIII through XIII were all voluntarily dismissed, as were all defendants save for ACHA and Hannon. (Text Order, ECF No. 38).

Having been unable to settle the matter, (ECF No. 73), the present Cross-Motions for Summary Judgment followed. (ECF Nos. 76–77). Defendants have moved for summary judgment on all remaining claims, (ECF No. 77), to which Plaintiff responded in opposition, (ECF No. 81). Plaintiff seeks summary judgment as to Count II alone, (ECF No. 76); Defendants responded in opposition, (ECF No. 82), and Plaintiff replied in further support, (ECF No. 83).

### III.     LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### IV. DISCUSSION

The parties have cross-moved for summary judgment as to Count II of Plaintiff's Amended Complaint—her § 1983 claim for denial of pre-deprivation procedural due process as to Hannon in his individual capacity—and Defendants have further moved for summary judgment as to Count XIV, Plaintiff's claims for denial of fundamental fairness as to both Defendants under New Jersey common law. (ECF Nos. 76–77). For the reasons that follow, the Court concludes that Plaintiff is entitled to summary judgment with respect to Count II and Defendant is entitled to the summary judgment with respect to Count XIV, and thus grants Plaintiff's Motion and grants Defendants' Motion in part and denies it in part.

#### A. Plaintiff's Pre-Deprivation Procedural Due Process Claim (Count II)

The parties each seek summary judgment with respect to Count II, Plaintiff's § 1983 claim for Hannon's alleged denial of her pre-deprivation procedural due process rights. (ECF Nos. 76–77). Plaintiff argues that she was entitled to notice of cause and a hearing of some kind prior to the termination of her employment. (Pla.'s Br., ECF No. 76-2 at 2–6; Pla.'s Resp. ECF No. 81 at 1–6). Defendants do not contest that Plaintiff received neither, (Pla.'s SOMF, ECF No. 76-3, ¶ 18), arguing instead that she was not entitled to them, (Defs.' Br., ECF No. 77-5 at 7–15; Defs.' Resp., ECF 82 at 3–7). But Defendants' position is plainly incorrect in light of the Supreme Court's holding in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). As such, for the reasons that follow, Plaintiff is entitled to summary judgment as to Count II.

Plaintiff brings this suit under 42 U.S.C. § 1983,[3] alleging that Hannon violated her pre-

---

[3] To succeed on a § 1983 claim generally, a plaintiff must show "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *See Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Defendants do not appear to dispute that Hannon was a state actor for § 1983 purposes, (ECF Nos. 77-5, 82), and thus, the Court need only analyze whether Hannon violated Plaintiff's rights.

deprivation procedural due process rights under the Fourteenth Amendment. (Am. Compl., ECF No. 33). To determine whether Hannon deprived Plaintiff of due process, the Court "must first ask whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of 'life, liberty, or property.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (quoting *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)). If so, the Court "then must decide what procedures constitute 'due process of law.'" *Id.* (quoting *Robb*, 733 F.2d at 292). As to the first question, Defendants concede that Plaintiff had a Fourteenth Amendment-protected property interest in her continued employment. (ECF No. 82 at 3). Accordingly, all that remains for the Court to determine is what sort of process must she have been afforded before she was deprived of her job. *Loudermill*, 470 U.S. at 541 ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). The answer to that question is simple.

As the Supreme Court explicitly stated in *Loudermill*, a "tenured public employee is entitled to oral or written notice of the charges against h[er], an explanation of the employer's evidence, and an opportunity to present h[er] side of the story" before her employment may be terminated. 470 U.S. at 542, 546. These procedures do not need to be formal or elaborate, but they remain necessary: the employee is entitled to some form of "notice and an opportunity to respond." *Id.* at 545–46. And "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Id.* (footnote omitted).

Therefore, there can be no doubt that Plaintiff was entitled to notice and some sort of hearing to permit her to respond before she was terminated. *Id.* at 542. The parties agree that she received neither. (Pla.'s SOMF, ECF No. 76-3, ¶ 18). Having not, Hannon deprived Plaintiff of

9

her due process rights under the Fourteenth Amendment and Plaintiff is entitled to summary judgment as to Count II.

Defendants raise several arguments to try to avoid this conclusion, none of which is persuasive. First, they suggest that Plaintiff was not entitled to notice and a hearing because no statute or provision of the collective bargaining agreement to which Plaintiff was subject provided her such a right. (ECF No. 82 at 3). But Plaintiff's right to a pre-termination hearing does not flow from a statute or an agreement; rather, it derives from the Fourteenth Amendment. *Loudermill*, 470 U.S. at 542. Defendants misread *Loudermill* when they suggest that "the decision was based on the existence of a[n] Ohio statute that specifically provided the aggrieved party with the right to a pre-termination hearing." (ECF No. 82 at 3). *Loudermill*'s holding is constitutional; it describes what process is due for the deprivation of a protected property right under the Constitution. *Id.* ("[The Due Process Clause] requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."). Plaintiff was denied her due process rights here. *Id.*

Next, Defendants seem to argue that the notice they provided Plaintiff was specific and supported by sufficient evidence. (ECF No. 82 at 4–5). That might well be true, but it is irrelevant because of *when* they provided that notice. Defendants agree that the "first notice" Plaintiff received of the cause for her termination was the same memorandum that effected her termination. (Pla.'s SOMF, ECF No. 76-3, ¶ 18). By failing to provide this notice *prior* to Plaintiff's termination, she was denied due process. *Loudermill*, 470 U.S. at 542.

Defendants also suggest that Plaintiff's immediate termination was necessary because her behavior "became increasingly unstable." (ECF No. 82 at 4–5; *see also* ECF No. 77-5 at 8–10). However, Defendants' concern about Plaintiff's behavior did not provide them license to violate

10

her due process rights. More importantly, *Loudermill* provides direction for how to proceed in such circumstances: "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." 470 U.S. at 545–46 (footnote omitted). Defendants did not do so in this case. Instead, Defendants terminated Plaintiff immediately, and in doing so, denied her due process. *Id.* at 542.

Defendants relatedly argue, relying on cases such as *Gilbert v. Romar*, 520 U.S. 924 (1997), that the flexibility of due process allows for *post*-deprivation process to satisfy Fourteenth Amendment requirements in certain circumstances.[4] (ECF No. 77-5 at 7–9). But Defendants miss the critical difference between cases like *Gilbert* and those like *Loudermill* and the present one: *Gilbert* concerned the process due a tenured public employee prior to a *suspension* from employment, not *termination*. *Compare Loudermill*, 470 U.S. at 542 *with Gilbert*, 520 U.S. at 928–29; *see also Reilly v. City of Atlantic City*, 532 F.3d 216, 233–36 (3d Cir. 2008) (reversing district court's denial of qualified immunity for failure to considered post-deprivation procedures in a suspension, not termination case). Defendants are correct in saying that "a public employee is not absolutely entitled to a pre-suspension hearing." (ECF No. 77-5 at 8). But Plaintiff was not suspended; she was terminated. (Pla.'s SOMF, ECF No. 76-3, ¶ 17). Accordingly, under *Loudermill*, she was entitled to but denied notice and a hearing, and thus deprived of due process.

---

[4] Defendants also cite *Biliski v. Red Clay Consolidated School District Board of Education*, 574 F.3d 214 (3d Cir. 2009), for this proposition, but that case is also readily distinguishable. In *Biliski*, although the plaintiff did not receive a formal hearing prior to his termination, he did receive an informal one: he met with and discussed the cause for his termination with school administrators before the school board made the ultimate decision regarding his employment. 574 F.3d at 215–18. This sort of informal hearing—which *Loudermill* explicitly sanctioned, 470 U.S. at 545 ("[T]he pretermination 'hearing,' though necessary, need not be elaborate.")—coupled with post-termination process secured the plaintiff's due process rights. *Biliski*, 574 F.3d at 224. Here, Plaintiff was denied even an informal hearing before her termination. As noted above, the same memorandum that provided her the "first notice" of the cause for her discipline actually effected her immediate termination.

11

470 U.S. at 542.

Finally, Defendants argue that regardless of whether Hannon violated Plaintiff's rights, he is entitled to qualified immunity. (ECF No. 77-5 at 13–15). He is not. The qualified immunity doctrine generally shields government officials from liability when they perform their duties reasonably. *E.g.*, *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To overcome the immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735. Courts conducting this qualified immunity analysis have the discretion to tackle either of the prongs first. *Id.*

Taking them in order, first, as explained above, Hannon violated Plaintiff's Fourteenth Amendment due process right to notice and a hearing prior to her termination from tenured employment. As to the second question, a government official's conduct "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (quotations and alterations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The doctrine does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Here, we have both: *Loudermill* is directly on point and had been the law at the time of Plaintiff's termination for over thirty years. 470 U.S. 532. No debate remained as to what process was due to tenured public employees before their termination. *Id.* at 542. Hannon failed to provide it. (Pla.'s SOMF, ECF No. 76-3, ¶ 18). He

violated Plaintiff's clearly established right and therefore is not entitled to qualified immunity. *Loudermill*, 470 U.S. at 542.

In sum, because Hannon terminated Plaintiff—a public employee with a constitutionally-protected property interest in her continued employment—without prior notice or a hearing, he deprived her of her pre-deprivation procedural due process rights in violation of § 1983. She is thus entitled to summary judgment as to Count II, her Motion is granted, and Defendants' Motion is denied in part.[5]

### B. Plaintiff's Fundamental Fairness Common Law Claim (Count XIV)

Defendants have moved for summary judgment with respect to Count XIV, Plaintiff's claims for denial of fundamental fairness under New Jersey common law, arguing that Plaintiff was not subject to any "unjust and arbitrary governmental action" in her termination. (ECF No. 77-5 at 15–17). Whether or not that is true, Plaintiff's fundamental fairness claims suffer from a more glaring deficiency: it does not appear that any such claim exists.

In support of her "claim," Plaintiff cites cases such as *State v. Saavedra*, 117 A.3d 1169 (N.J. 2015), which refer to the "doctrine of fundamental fairness." *Id.* at 1185. That doctrine, however, is a legal framework "sparingly" applied "at various stages of the *criminal justice* process" to "protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily." *Id.* (emphasis added) (quoting *Doe v. Poritz*, 662 A.2d 367, 422 (N.J. 1995)). As such, it is better understood as a state constitutional backstop akin to the vagueness doctrine, *see, e.g.*, *State v. Lee*, 475 A.2d 31, 36 (N.J.

---

[5] Having established Hannon's liability under § 1983, the question remains what damages Plaintiff is due. More specifically, the question presented is what damages were caused by the violation of her pre-deprivation rights when in the end she was provided with a hearing and her termination was upheld. That question is for another day. In an order to follow, the Court will establish appropriate procedures to resolve these remaining issues.

1984), on which criminal defendants can rely to challenge charges levied against them. The Court is aware of no case—and Plaintiff points to none[6]—recognizing a private cause of action under the doctrine.

As a federal court sitting in diversity, in the absence of any clear precedent from the state's high court, the Court must predict how the Supreme Court of New Jersey would treat the question of whether such a claim exists. *See, e.g.*, *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008). The Court would not presume to create a brand new cause of action without even persuasive authority suggesting its existence. *Cf. Proske v. St. Barnabas Med. Ctr.*, 712 A.2d 1207, 1210 (N.J. App. Div. 1998) ("Generally, a new cause of action should be created by legislative enactment or by the Supreme Court rather than by an intermediate appellate court."); *see also Hunt*, 538 F.3d at 220 ("In making such a prediction, we should consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand."). Accordingly, the Court concludes that Count XIV must be dismissed.

---

[6] Plaintiff cites *In re A.I.*, 922 A.2d 817 (N.J. App. Div. 2007), as an "example of the application of fundamental fairness" by a New Jersey court. (ECF No. 81 at 7). But that description is a stretch. *A.I.* does not recognize a fundamental fairness cause of action. Nor does it really refer to the fundamental fairness doctrine described in *Saavedra*, 117 A.3d 1169. Rather, *A.I.* explains how a state administrative agency failed to abide by the concept of fundamental fairness—and thus violated state statutory and administrative law—when it failed to explain its reasons for dismissing allegations of child abuse against a teacher. 922 A.2d at 824–25. In other words, the fundamentally unfair nature of the agency's action was, in part, the reason it had violated the state administrative code. *Id.* This holding—if it can even be called that—can hardly be used to support the private cause of action Plaintiff seeks to advance here.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment, (ECF No. 76), is **GRANTED**, and Defendants' Motion for Summary Judgment, (ECF No. 77), is **GRANTED IN PART and DENIED IN PART**. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**